Good morning, Your Honors, and may it please the Court, my name is Eugene Gorokoff and I'm here for Appellant Clyde Peterson. Your Honors, I'd like to start this morning by addressing the plea issue first, the issue of the plea agreement. And I'd like to just start by pointing out that this Court has recognized again and again and again the importance of the plea bargaining process, the importance of transparency and predictability in the plea bargaining process, and the fundamental due process rights that are involved. What was the essential thing that the government offered in this plea agreement? What the government offered in this plea agreement, we submit, and I believe it's clear from the text of it, is not to seek a sentence outside of the sentencing guidelines. And the key paragraph is paragraph 6F. I mean, to get there, that's not explicit, but to get there, you've got to give me something else here. I mean, what is it? I've got the sections here that you're all seeing here. Is section 7 the main part of what the government is offering here? I agree that that's the main part of the government's argument. What is it offering? It says, recommend a reasonable sentence. What is that? Well, I mean, I'm trying to understand how much the government, what does that give anything? They already got to do that. That's exactly right, Your Honor. That's exactly right. And I think that in order to give this paragraph meaning, the only way we can do that is to read that in context with paragraph 6F. Were you the lawyer at trial? I was not the lawyer when this plea was negotiated. I'm just wondering, is this usual? I mean, it seems like a defense lawyer would look at that and say, what in the world do you mean by a reasonable sentence? You already got that obligation ethically. I think the prosecutor's code and all. You can't recommend an unreasonable sentence. You might be sanctioned for it. That's right, and I think the evidence in the record, Your Honor, is that this is— So why would a defense counsel even think you're getting something from it? Unless, I guess from your perspective, you did think, at least the counsel thought they were getting something, which is what you argued. That's correct, Your Honor. I think the counsel, my prior counsel before I took the case, believed he was getting something because in paragraph 6F, that's where both parties were saying we agree not to raise any other guidelines disputes. Both parties were making a promise about the guidelines. Then the defense comes out and says openly, and I reserve the right to seek a below-guidelines sentence. The government says nothing. We know from the record we have these other plea agreements from this very U.S. Attorney's Office during the very period of time that this case was going on, where when they want to reserve the right to seek an above-guidelines sentence, they openly and clearly state so in that very paragraph. That's exactly where they say either the parties reserve the right to go outside the guidelines or the government reserves the right to go above the guidelines. What do you make of a pattern and practice type argument? In other words, the lawyers there kind of know what was being offered, and this is what's done in this area? I think the main evidence is that it's a pattern and practice that's evidence before the court. This court is allowed to consider extrinsic parole evidence of the government's practices, and what we've submitted is just four samples of plea agreements from this very period of time where when the government wants to reserve this right— Only if it's ambiguous. If the terms of the agreement is plain, we don't need to look at it as anything outside the record. That's right, and at the very best, in the very best case scenario for the government, and it's not good, this argument is ambiguous, and that's the best case scenario for the government. What we submit in this case is that this agreement is not ambiguous because right in the place where a person would naturally reserve the right to argue above the guidelines, they say nothing, and the only way we can give meaning to Paragraph 7 is to read it in conjunction with Paragraph 6, and I'm not making that up. That's a rule of contract interpretation that you have to read the plea agreement as a whole. You can't pick and choose individual paragraphs. Paragraph 7 comes right after Paragraph 6 where the parties make stipulations about the guidelines, and Paragraph 7, it can be meaningful if you say sometimes a reasonable sentence could be at the high end of the guidelines but not at the low end. Sometimes a reasonable sentence could be in the middle of the guidelines but not on the low end or the high end. The government routinely makes that argument, so you can still give— So if we agree with you, do we send it back to the same judge for sentencing or— It would be a different judge, Your Honor. It would be a different judge. The law of this circuit is that if the court orders specific performance of a plea agreement, it has to go before a different judge because the trial judge has been, for lack of a better word, tainted by the government's argument. Now, the other evidence, Your Honor, that I would submit that Paragraph 7 did not intend to give the government a carte blanche to seek any kind of sentence that the government wanted is the fact that if you look at Paragraph 6F, the defense is saying, I'll give you notice. If I'm going to go below the guidelines, I'll give you notice, and I'll file a brief, and I'll explain my reasons. The government doesn't make a similar promise in Paragraph 7, and that's no trial attorney would accept that kind of a situation and allow the government to ambush them and just say, okay, you could seek whatever sentence you want, and you don't have any reciprocal notice requirement. And no trial judge, at least that I know in Maryland, would ever accept a plea agreement that would allow the government to come in and seek an above-guideline sentence whenever it wants. So I think that's another bit of evidence from even just the text of this plea agreement, that Paragraph 7 is not a carte blanche for the government to seek whatever kind of sentence the government wants. And again, Your Honors, if it's merely just an ambiguous agreement, the law of this circuit is clear that an ambiguous agreement has to be read against the government and in favor of the defendant. So moving on from that, Your Honors, unless there's any other questions on the text of the plea agreement itself, even if we set that issue completely aside, the record in this case shows that Mr. Peterson did not understand a material term of this plea agreement, that material term being what could the government recommend. Mr. Peterson was under the impression that the government could not recommend a sentence above the high end of the guidelines. And I think the record is clear on that point. I think his attorney's letters and representations to the court are fairly clear about the fact that Mr. Peterson was completely blindsided by this issue. And when the Rule 11 colloquy happened, the district court did tell Mr. Peterson. This is going to the issue of whether this plea was voluntarily made. That's correct, Your Honor. Voluntarily and knowingly. But he knew that the court could order a sentence above the guidelines. Yes, Your Honor. I think that's a critical distinction. He knew that the court could go above the guidelines, but he believed that the government's recommendation could not be above the guidelines. And I would submit to Your Honors that that is a material term because the reality is that the government carries great weight when it comes before a federal court. The government's sentencing recommendation is a very important factor that judges take into account. And I was trying to come up with – I really probably said – Well, the bottom line on this voluntarily made issue you have here is you had a Rule 11 colloquy, and the defendant stated that he was voluntarily entering his plea. And the law is pretty clear that full knowledge of the sentencing guideline is not required. That's true, Your Honor. However, the issue here is different. The issue here is full knowledge of what the government's ability to recommend was. And that's not just a matter of knowing. That's a matter of something you bargain for. Because when defendants bargain for a plea agreement, they're worried about three things. But it turns on the first argument again, on the breach of agreement, because if the government can argue above the guidelines, then – Well, even if the government can and Mr. Peterson's understanding is that the government can't and his understanding is not cured by the Rule 11 colloquy, which it was not in this case, then that's not a knowing plea. So even if the government could have done this, the fact that Mr. Peterson believed they could not makes it not a knowing plea. And it's – But if the government can and he understands that the court can't sentence you above it, what difference does it make if the government can't? I think it makes a huge difference, Your Honor, because that's something – that's an assurance that he can bargain for. It matters to the defendant what the government is going to come in and recommend at sentencing. That's a very important issue. That's an issue that judges take very serious account of what the government is recommending. And so I probably failed to come up with a great analogy, but the way I would try to explain it is like this. You know, I hope that nobody crashes into me while I'm driving my car on the road. I hope nobody does. The thing that I can control is I can put on a seat belt and I can follow the traffic laws, right? You don't need a good analogy when you have your first argument. And your first argument is either going to rise or fall on this whole thing. That is, it's a breach of the agreement from your perspective because they argued something they said they weren't going to do. If you fail on that, the ball game is over. It's a different thing. Now, you make this argument also about the injury and says that the trial court did not allow that to be addressed in the argument. That's correct, Your Honor. What happened here was that, you know, Mr. Peterson was shot by the police officer who arrested him. And I'll concede for purposes of this argument that that was a – let's say that was a proper use of force. But we raised this issue not less than four times in the district court because human experience teaches us that when we do something and we suffer a consequence from it, that, you know, that may have taught us a lesson and it may impact the need to impose a longer or shorter sentence. And what's remarkable in this case, Your Honors, is that the government never addressed this argument up to and including the day of sentencing. They never uttered a word about it once. And the district court never uttered a word about this argument once, including at sentencing. And that is – I would say courts have discretion to address or not address certain things, but I think this case lies outside of that area of discretion because it's so extreme. And on appeal, what the government has said is that, well, we made an argument at the actual sentencing hearing about how pretrial confinement was making his injury worse, and the judge mentioned pretrial confinement, and therefore he addressed the issue. And that's just not the case. The argument at the sentencing hearing was something of updating the court on the continuing problems that Mr. Peterson had from getting inadequate treatment in pretrial custody. And the district court said nothing about an injury. He said nothing about a surgery. He said nothing about his hand. He said nothing about a gunshot. And that wasn't your point anyway, that whether he could get treatment or not in prison. It was whether the fact that he may have learned something from that should impact the sentence he receives. That's exactly right, Your Honor. And I think the part of the treatment. That was not addressed at all. At all. And I think the part of the treatment is really saying this man is suffering. He's suffering a painful condition. He may have to have his finger amputated. And so that's all the more reason why we can conclude that he's learned a painful lesson from his mistake in this case. And that was never addressed by the district court. And, Your Honors, I think that, again, this court has said that it's a discretionary matter. Sometimes courts can't address issues. Sometimes they don't have to address every issue. In this case, we have an above-guideline sentence. And the Supreme Court in Rita has said where there's an above-guideline sentence, the court has to be careful. The court has to be more thorough. More is expected from the trial court. And our argument regarding the hand injury was really one that was very much implicated in the above-guideline sentence. We were saying this is a reason not to go above the guidelines. And so the fact that under these circumstances the district court failed to address it, I think, is an abuse of discretion, Your Honors. Thank you. Thank you. All right. Mr. Bernstein. Thank you, Your Honor. May it please the court. In June of 2016, Clyde Peterson pled guilty with the benefit of an exhaustive Rule 11 colloquy with the district court, a comprehensive written plea agreement that Mr. Peterson signed. Section 7, your main part of that agreement, the agreement, the plea agreement, is that your main part of it that the government will argue for a reasonable sentence? And when Your Honor says the main part of the plea agreement. Well, when you have a quid pro quo, you're giving up something. What are you giving up? What are you doing in order to get someone to sign an agreement like that? So I agree with the point that Your Honor made a moment ago. What's the answer to my question? What are you giving up here? Well, we're establishing the guideline stipulation, so we're saying this is exactly what we think his guideline range is going to be. Which is? It was 17- I recommend a reasonable sentence. So to answer Your Honor's question in a very direct way, in paragraph 7, we're not giving up anything. Good answer. We are finding ourselves doing what the Constitution requires. You already had to do it. Correct, Your Honor. You just said, I'm going to get up and come in here and walk in the court. Same thing. Gave nothing. With respect to. So what did you give up in this agreement? What is the- if it's read you're not giving up anything, what is the agreement? Who's giving up or who's- tell me what it is. Well, we're not giving up anything in paragraph 7, but in the remainder of the agreement, we are conceding that the advisory guideline range is, or the offense level, is going to be between 17 and 21. We are giving the three levels for acceptance and responsibility. We are telling the defendant that we're not going to bring additional charges based on other evidence related to the same set of transactions. So in 6F, you said the defendant can argue outside the range, but you didn't say in 7 that the government could. And- Is that just an oversight or just a play upon words? I- my answer to that is they mean the same thing. That the- well, paragraph 6F says that the defendant can recommend something outside of the advisory guideline range. Yes. Paragraph 7 says that the government needs to recommend a reasonable sentence, and that's what the Supreme Court has pretty vividly defined over the last- Well, you said it means nothing. Well, you know, you've got to have- you didn't- I know it means nothing, but you didn't put a sentence in it that means nothing. Well, I- We don't do that. I didn't exactly mean that the term reasonable sentence means nothing. I just meant that we're not giving up anything in paragraph 7 that the Constitution already doesn't tell us that we have to do. And as I was saying, paragraph 6F, it says that Mr. Peterson could go below the low end of the advisory guideline range. Paragraph 7 uses a slightly different phrasing. But just out of fairness, if you knew you were going to get up and argue outside the range, and you've got this agreement, and you're going back and forth, and you say the defendant can do it, and you don't say anything about the government, then you get up and do it. That doesn't sound fair. Well, I disagree, Your Honor, that we don't say that we can do that. In paragraph 7, again, we use this term reasonable sentence, which the Supreme Court has said not only- The government didn't object to anything, but the government also did not say in response to that or any part of that, we intend to seek an above-guideline sentence. Isn't the defendant entitled to notice when that's going to happen from the government? Your Honor, the government did give such notice when it filed its written sentencing submission that was, at the time, several weeks before the sentencing hearing was supposed to occur. The government made its intention clear that it was going to recommend 108 months' imprisonment, which some year and a half later is the exact sentence that the government indeed or the exact recommendation that the government indeed made at sentencing. So it wasn't exactly as if the government showed up and said- Was that in Mr. Peterson's case or Mr. Simmons's case? The government sentencing recommendation in Mr. Peterson's case is at Joint Appendix 153 to 167, and the government makes its recommendation in its written sentencing submission that it was going to seek an 108-month sentence. Wait. This is the government's response to a sentencing memorandum. So it's the government's response to defendant's sentencing memorandum, which was written because defendant was suddenly surprised by the fact that Mr. Simmons got an above-the-guideline sentence. That wasn't the government giving appropriate notice in fairness to the defendant. That was in response to the defendant saying, what's going on here? Well, I suppose- This is a response to them. It's a response to Mr. Peterson's sentencing submission, but my point there, Your Honor, was that the government filed written notice well before the sentencing hearing ended up being- Only because Mr. Peterson's counsel brought it up. Well, I think I'm not necessarily- Was Mr. Simmons aware before his sentencing hearing that there was going to be an above-guidelines argument by the government? I believe, Your Honor, the government filed a- The government did file a written sentencing submission for Mr. Simmons as well, and I am almost positive that the government made its sentencing recommendation clear in that written submission as well. And my only point was that before both sentencings, or certainly before Mr. Peterson's sentencing, the government did give written notice to Mr. Peterson, and it wasn't exactly as if the government showed up on the day of sentencing. You were about to. I- You only- Not whoever. The government. Because this notice was only in response to his attorney bringing it to the court's attention, and that was only because his attorney found out that Simmons got an above-guidelines sentence. The government, it appears, without this, was prepared to march into sentencing and go, surprise, above guidelines, under eight months, almost double. I- Your Honor, I don't necessarily agree that that was the case. I believe the government, and I can't exactly speak for the Assistant United States Attorney who handled the case at the trial level, but I believe it was that AUSA's practice to file a written sentencing submission in every case before sentencing. And as far as our district goes, I'm not aware of any AUSAs who don't file anything before they go into sentencing. So, again, that AUSA is no longer with the office, but based on our office's practice, we always file something in writing saying this is what we're going to seek when we walk into sentencing. I've correctly said you didn't argue this case. This is not your case below? No, Your Honor. Okay. So, you're looking at Section 12. Section 12 says, if the defendant breaches this agreement, the government shall be free to make sentencing recommendations other than those set out in this agreement. What would those have been?  Your Honor, probably the most logical one that comes to mind is a sentencing recommendation that is based on a different guideline calculation. So, I'm not saying this was the case here, but the government could argue that there was obstruction of justice and argue for an additional two levels, or that there was some cross-reference because we found out, and again, these are just hypotheticals, but that the firearm was used in a homicide and argue under 2X that the guidelines should be something extremely different from what we agreed they were. The breach section simply says that if Mr. Peterson breaches this plea agreement, we can do things that are simply not agreed to in the previous sections, being the guideline stipulations, what charges we're going to bring, and so forth. Again, to go back to Your Honor's original point, I'm not saying that if the guideline stipulations stayed the same and the charges stayed the same, it wouldn't add anything, but more to the plea agreement than just the— Say that again because that's critical right there. If what happens? If the charges stayed the same, so he just sticks with the 922G conviction. And the guidelines don't change. And he breaches it. And he breaches it. Then what happens? We still have to make a reasonable sentencing recommendation. I got that, but I'm saying what does this section 12 mean? That the sentencing—you can then have sentencing recommendations other than those in this agreement. Well, nothing will change, Your Honor, based on that set of facts, but of course— But the only way to make it mean something would be now you can argue outside the range. And that, Your Honor, respectfully, is where I disagree because this— Well, it's the only thing you can get out of here because everything else is included. You said the defendant can argue outside the range. You said both of you can argue about background and character in Section 8. So what—I mean, why add this little paragraph in there? You know, at the end of the day, even if we continue to quibble over this a bit, do you not agree this is ambiguous? Well, I think there's a distinction between ambiguity and a clause of a contract that encompasses a broad range of actions that the government could take. Through Gall, Rita, Kimbrough, these cases that the Supreme Court has decided— I understand it from the government's perspective, but objectively, is this not an ambiguous contract? I do not think it's an ambiguous contract, Your Honor. Even with Section 12 in there, Section 7, about something you said, well, we didn't—it didn't mean anything. We just stuck it in there. But we try to believe that when the U.S. attorney puts something in on a contract, it actually has meaning. You don't just put in stuff just to put it in there. So if it has a meaning and then you've got Section 12, it tells you there's something else that you can do if he breaches. And here you say, well, if everything remains the same, there's nothing. And to link back to my prior point, there are other things that the government could do under the right circumstances in Section 12 besides— We've delineated the circumstances that would remain the same except if he breaches. If they remain the same, Your Honor, but they may not. There may be facts that the government could argue, again, constituted obstruction of justice, constituted—I mean, if this were a different type of case— Counsel. Yes, Your Honor. And under your interpretation of the plea agreement, the government could recommend a sentence up to the maximum, statutory maximum. Is that correct? If supported by the 3553A factors as well as the guidelines, Your Honor. Well, that's based on your argument, right? You could argue—ultimately, the judge is going to sentence, but you could argue up to the statutory maximum under your interpretation, correct? If under the Gall definition, that's a reasonable sentence. We don't know what—no one knows what a reasonable sentence is because I don't think anybody's ever told us what substantive reasonableness is. So we have to say at this point, it's up to the maximum because there's no definition of it, right? There is a definition. There is a definition? What is it? Under Gall, it's a sentence that's supported by not only the guidelines, but by the 3553A factors as well. What does that mean? You list one of the factors, danger to society. Who says that's unreasonable to give you the max? Danger to society. Likelihood of doing something again. There is nothing. It's not. It's ethereal. It's out there in the atmosphere. But the point is this. Judge Wynn was asking about paragraph 12. If they breach, there are consequences, right? Yes, Your Honor. So that means the corollary is that if they don't breach, there must be some restriction on you, right? Yes, Your Honor. But what is the restriction then? If you can already, as you said, as you interpreted, go all the way to the max, what is the restriction that you have without a breach? The restriction, Your Honor, the two that I just mentioned, one that we are stuck with the guideline stipulation that we agree to. You didn't agree to that. You just told me you could argue up to the max. All you said is that we agree that's your guideline sentence. But you said you could argue up to the statutory maximum for sentencing. That's what you said. I started that way. I said what? And in your interpretation, you said yes, you could. So you'd have to say there are no consequential differences really because you could do it anyway. But, Your Honor, the guidelines are important to the court's analysis when making a final sentence. I thought the government's recommendation was important. It seems like statistically you can show that it tracks more your recommendation than it does guidelines sometimes, doesn't it? A lot of times. It is important, Your Honor. But, again, the guidelines are important.  They wanted to have some importance by that you are held to that unless they breach. The importance comes by fairness. But to come here and argue in court that you can do what you wanted anyway to the max would read that this contract is a nullity. And I don't think our Constitution on the courts ought to give, you know, sanctions to that kind of thing. A protection to an agreement like this to be read, well, we could have done anything. You signed it. You went through the rules. You knew the judge. He knows that the judge could have sentenced him. But he thought he was dealing with the government saying, listen, if you play fair with us, we are not going to argue above the guidelines. That's the only fair interpretation you'd have. Otherwise, you'd have to make this contract a nullity. Totally. You know you agreed you didn't give anything in Paragraph 7. Now we say 12 meant nothing either because there are no consequences because I could have done the same thing without a breach. How is that fair? And again, Your Honor, I respectfully don't agree that Paragraph 12 is a nullity. Again, Paragraph 12 tells us that without a breach, we're stuck with 57 to 71 months as the guideline range. As the range? As the range. Nobody cares what your range is. They want to care about how much I'm going to be sentenced. Well, I — You don't sentence the range. You sentence a person with months. So he said, you know, whoa, I'm happy now. My range was 57, but I got 90 months. What difference does that make what the range was? The key is you're trying to have some fairness. And the government to come in and argue that this is fair, it's somewhat interesting that you say that this is fair. Well, Your Honor, I think this partially gets into the secondary argument about whether the plea was knowing or voluntary. But, again, this term reasonable, it does have this defined definition that incorporates 3553A and tells us that we're not limited to just the guideline range. And, in fact, if that were the case, if a reasonable sentence did equal a guideline sentence, then every time a defense attorney asked for a below-guideline sentence, then they would be asking for an unreasonable sentence as well. But that's just not the case. The Supreme Court for almost two decades now has told us that a reasonable sentence is one that not only incorporates the guidelines, but the 3553A factors as well. And so the assistant United States attorney who handled the case and who did the sentencing, or I ended up doing the sentencing when that AUSA left, but who made that sentencing recommendation, incorporated not only the guidelines, but also Mr. Peterson's character and history and criminal history and so forth. So to say that Mr. Peterson was not on notice based on this, I think, this well-treaded definition of what reasonable is, that the government could make a recommendation above the guideline range, I don't think the record supports that. And just in terms of timing, Your Honor, Mr. Peterson pled in June of 2016. It wasn't for — well, it wasn't until 15 months after pleading guilty that he moved to withdraw his guilty plea. And it wasn't until 11 months after the government made its sentencing recommendation in writing of 108 months' imprisonment that he moved to withdraw his guilty plea. So the legal issues aside with whether he knowingly understood what he was pleading to, I think the record doesn't support the sincerity of that assertion. I think the record supports this idea that he pled guilty and then he had more or less buyer's remorse. Am I wrong? Was there some stipulation that you said that you pretty much knew what all the main factors were in terms of the sentencing factors here that you stipulated that you were aware of them and there was no new ones? Isn't that something? Yes, Your Honor. That is in the plea agreement. It's in the plea agreement, isn't it? Yes, in the plea agreement. What paragraph is that? That's paragraph 6. Right. That's paragraph 6 beyond F, right? It talks about we agree that we kind of know everything pretty much the factors of the 3553 factors. That's why we're agreeing to the guidelines, right? That's another thing that was suggested. You shouldn't be going above the guidelines. Because you're saying, and that's what they're bargaining for. They don't want to be surprised like, oh, we agree here, but we didn't know that you did this. You'd have to show that something that was subsequent that you didn't do that. Respectfully, Your Honor, paragraph 6 is only a stipulation with respect to the guidelines. It says nothing about any 3553A factors. Well, it's a guideline. The whole idea, the spirit of it is that there are no surprises, right? And that's why the only surprise is they have to give you notice if they're going to go below so you can have a chance to respond to it or whatever in that sense, right? And, Your Honor, that is part of the benefit of the bargain here, is that Mr. Peterson, based on paragraph 6 of the plea agreement, understood that when he walked into sentencing, at least with respect to the guideline range, there would be no surprises. But paragraph 6F says this office, the government and the defendant, agree that with respect to the calculation of the advisory guideline range, no other offense characteristics, sentencing guideline factors, potential departures or adjustments set forth in the guidelines will be raised or in dispute. That's what it says. That's correct, Your Honor. And that is, again, part of the benefit of this bargain that Mr. Peterson got. He didn't get it. I mean, that's what was written there. Well, he did, Your Honor, because the government, when it went into sentencing, did say that the sentencing guideline or the adjusted level was 21. It didn't say that he obstructed justice, we should add 2, or that he was a leader organizer, we should add 4. We didn't do any of that. Does this U.S. Attorney's Office have form plea agreements? Yes, Your Honor. Okay. Is this paragraph 7 in that form? At the time of sentencing, this office will recommend a reasonable sentence? Yes, Your Honor. This is in all of our plea agreements. That's in all of them? It wasn't in? I thought there are other plea agreements that say above that we will reserve the right to go above the guideline. And I understand Mr. Gorokoff's point. Those were plea agreements from several years ago, and I think they were meant to be offered as pleas from around this time. I can briefly explain the evolution here. The plea agreements previously said that the government would recommend a guideline range, and they were exact about that. And then when we wanted to go above or below, we would make that express in the plea agreement. Then with the decisions that came from Gall, Rada, and so forth, where Gall, for example, said that you can't even presume that a guideline sentence is a reasonable sentence and that you really do have to do a more individualized assessment that incorporates 3553A, the office made a change to not binding ourselves to the guidelines, but instead tracking the language from the Supreme Court when the, you know. In other words, add a little ambiguity to it. Don't say what specifically you're doing. Say the word reasonable because you think Gall says that even if it's above the guideline, that means it still can be reasonable. So take advantage of this and take advantage of the defendants who come before you by not really pointing this out. I suppose then this happens. Well, it's a term of art, Your Honor, reasonable sentence. I know what terms of art are, and I know why you changed this agreement. You do too. Change the agreement because it doesn't have the specificity of the prior agreements, and if that's permitted, I would submit not every defense counsel would let you do it either. To? Because there are agreements in which you specifically indicate you will not argue above range. Is that not true? My understanding is that the plea agreements used to track that language to say we're going to recommend. You won't get a plea agreement if you can't get an agreement from the defendant's counsel on the thing, and there are reasons beyond the fact that you think you're giving them something. There's something called a trial. There's a reason you go into plea agreements. You couldn't exist without them, first of all, but beyond that, you know, the defense counsel just may not do it, and you might have put that language in there, and you're telling me you don't do it at all? No, Your Honor, yes. The current plea agreement is that our office offers and that. I understand the form was, but not everybody will sign on to just a form agreement, right? That's correct, Your Honor, and so. So those of them that are savvy enough to pick up this paragraph 7 means nothing make you give them something, is what you're saying? I am not aware of any instances in sort of the modern era where once we change this language. Do you then in every instance where you have this paragraph, this is not the only case, you always go in, even with this language, and say argue above the range? No, Your Honor, I would not say that. I think that the government. Is this the only case that's been done in? That's probably not, Your Honor, but the government doesn't just simply walk in and argue above the range. Simply or not, whether or not you have the ability, the authority to do it or you feel like you can do it is the question, and so when you've got a defendant on the other side, all of a sudden, they've got this thing of reasonable language. My question is, is this a matter of course you get up and then argue outside the range? Well, we have the authority if supported by, again, the 3553A factors. But did you understand my question? Is that as a matter of course that you will then get up and do it? You certainly have, from your perspective, you have no reason not to, so why wouldn't you? Well, I just want to make sure I understand that when, Your Honor, it's a matter of course. You have this language in the form of grievance. In this case, the government argues above the guidelines. Is that something you do in all the cases? No, Your Honor, normally. Do you do it in most of the cases? Nope, normally. Have you ever done it in any cases other than this one? Have I personally recommended it? Not you, but to your knowledge, has this been done in any other case? I believe so, Your Honor, that we've recommended above-guideline sentences. Targeted before, even with that language in there. Correct, Your Honor. I'm not positive if I have myself, but I would not, if Your Honor is asking sort of empirically how often we do this, I would agree that it's not that often. We usually recommend a sentence within the advisory guideline range. I'm going to get at it this way because this is important because we're talking about fairness and consistency, and that is you did say you would recommend a reasonable sentence, right? Yes, Your Honor. And you do know in terms of when we look at this that a within-guideline sentence for appellate review purposes is presumed to be reasonable? Yes, Your Honor. Correct? Correct. All right, so you would think that if you have an agreement like this and you know the jurisprudence, that a fair assumption is that when you say reasonable, it ought to be to some degree somewhat guided by a little bit about that. But tell me this, what did you find out at sentencing that you didn't know that would suggest that the guidelines were no longer reached reasonableness? Well, for example, Your Honor, in between the plea and sentencing is, of course, the preparation of the pre-sentencing report where we get more detail about Mr. Peterson's criminal history, including the fact that in 1989, he got into a fight where he shot somebody in the jaw and the forehead. A year later, he got convicted of possession of cocaine. About eight years after that, he was found in jail with 16 years in prison. And you didn't know anything about that when you did this plea agreement? Are you saying the government did not know anything about that history when they entered this plea agreement? Again, Your Honor, I was not counsel. Well, it doesn't make any difference. You're the only person we can talk to. You represent the United States government. And can you represent that you did not know this before you had this plea agreement? Because if you can't, what you're arguing now is of no moment. Can you represent that the government did not know what you're now trying to lay out as to be something different? Can you? Yes or no? I cannot represent that for sure, Your Honor. Okay. That's what I thought. With that said, I can represent based on my own experience. Oftentimes. Well, anecdotal doesn't help us, counsel, because Judge Winn was trying to ask you what your knowledge is, and we don't know what that is. And you said you don't. I was very careful in you saying now, oh, you can't pile on now. You can't unless you can say that, no, as a matter of record, at least we didn't know this. Well, again, Your Honor, after the plea agreement is entered into, and this happens in every case. I know what you're about to say, but you can't represent that this is new material that you found. You're about to say you can't represent the government did not know this when they entered this agreement. I think you've already answered that question. What I can represent, Your Honor, is that in virtually every case, if not every case that I've been a part of, that I learn new things in the PSR, whether it's background about the criminal convictions. In some cases, it's mitigating. But even then you didn't respond to that PSR and say we're going to seek an above-guidelines sentence. You know, at the time when you've got 10 days to object or whatever, I think it's 10 days to object to the PSR, afterwards both sides do, submit whatever. You didn't object to the PSR, which calculated the guideline range as was listed in the plea agreement. And it wasn't until I think the date on there was somewhere in August, late August, that you filed your response to the sentencing memo of the defense. What happened between the PSR and when the response to the sentencing memo was filed that was new? So the reason why they didn't file any objections to the PSR is because we didn't see anything inaccurate about it. Did you file that letter, though, that says we don't have any objections to the PSR? Do you just not say anything in your district? You don't have objections? Normally it's by way of an email. At least in my experience, probation will send an email just making sure you don't have any objections. And then you say we don't have any objections. Correct. You also didn't mention the, and by the way, based on this criminal history, we're now going to seek an above-guidelines sentence. Well, the objections, Your Honor, are meant to be factual objections. It's paragraph 33. They're not just factual objections? Well, maybe. No, they're not just factual objections to PSRs. Really? That's the position I take, Your Honor, is that if there's a PSR and everything in it is accurate, I don't object to it because there's nothing for the probation officer. Even if it's just one conviction and you have evidence that there are ten, that's not factual because the one they show is factually correct, but you have nine others? That's what you're saying? Well, I would regard the criminal history, which is meant to be exhaustive, as factually inaccurate. So if there was something missing from the PSR, I would object to that as well and say to the probation officer, you have this criminal history, which is meant to be, again, all-encompassing as one conviction, but you're missing nine others. So when we look at this agreement, we've sort of had you interject some of your personal experience because you don't have knowledge of the extra things to do in terms of understanding this contract. If the contract is ambiguous, then we look outside. But you made a statement that you have used this type of agreement in cases. Have you ever argued outside the range when you had an agreement like this? I have not, Your Honor. What, didn't you do the sentencing in this case? With the exception of this case. I carried the torch from the sentencing memorandum that was filed. Why wouldn't you argue outside the range if the interpretation is what you say it is? There's nothing to keep you from doing it. Just out of the goodness of your heart or you just didn't feel like doing it that day? Why treat one defendant different than another? Well, Your Honor, the cases that I've handled, I've thought that the advisory guideline range accurately reflected the defendant's cause. So this is the only one you've seen that would be different than all those others. There's some pretty tough crimes we see come up from that district down there that you've handled. I know I'm putting you on the spot with that, and this is not your case, which I've already picked up on that. You're arguing something very difficult for you here because you've not done this. Anyway, why don't we just leave it there? I think we got it. And I do think I understand the question, but I do think, again, for the reasons that we talked about in the brief. Sometimes if you keep talking, you're going to dig further and you're going to get more questions. I think we can leave it there. And does the panel have any additional questions? We're good. Thank you. Thank you, Mr. Bernstein. Mr. Kalkhoff. Yes, Your Honors. I'd just like to start, one, by correcting something that I think is very important, which is that these sample agreements that we put in at Joint Appendix 329 to 332, I would really urge this Court to look at those closely because those agreements Mr. Bernstein said were from the past. That's really bad. Like a long time ago. That's absolutely not true, Your Honor. Those plea agreements we chose because they were both before and after Mr. Peterson's plea. We chose those for a reason because you have the plea agreement. The government says government reserves the right to go above. You worked on cases with grievance like this before? I have, Your Honor. And in a case where— What's been the practice that you can recall on those cases? The practice I recall, Your Honor, is it's a big deal if I leave a contract like this open, a term like this open and ambiguous for my client where the government can come in and slam him with the statutory maximum. That's a form agreement. I understand this is what they do. Well, no. My point, Your Honor, is that the form agreements that this office actually does use are in the Joint Appendix, and they clearly—they're very clear with respect to— What was that site again? It was starting at JA 329, Your Honor, and it's the four pages after that. Oh. And so, for example, on 329, if Your Honor looks at the last paragraph, it says, both parties reserve the right to argue that this court should sentence the defendant to a variant sentence outside of the guidelines range. I think my— What page are you reading from? I think my JA is— 329, Your Honor? Maybe not like yours. JA 329? No. No, what you're talking about is not on— It looks like a plea agreement page. No, I know it. I know what a plea agreement looks like and what a page looks like. I'm looking at it. I'm sorry. I know the number 329. I'm just telling you mine is yours. No. Does the bottom paragraph say number nine? Yes, Your Honor. Where are you reading from? I see it. Yeah, I see it. Both parties— You didn't read from the beginning of the sentence. The office and the defendant agree that both, right? What are the dates on these? Your Honor, we have the dates in our brief. Okay. Like I said, we were careful to select the contracts so that they, for lack of a better— That's your point, that he had said that these were— And they're not. And this is the contracts that their office are contemporaneously writing as Mr. Peterson was pleading guilty. So I think that's a very important point. I think the other important point that we can see from these is that when parties say we're going to go above the guidelines, below the guidelines, they agree to give each other notice so that they can brief stuff up, right? And here the government says, well, we really meant to reserve that in paragraph seven, where it just says we'll recommend a reasonable sentence. But they don't say anything about we'll give you notice, we'll file our brief 10 days in advance. There's no reciprocal agreement to give each other notice. And I think that's really powerful evidence that the government never intended or never planned at that time to go above the guidelines and certainly didn't give the defense notice. In fact, in the plea agreement here, it actually only says the defendant is required to give notice. Look at paragraph—the one I was reading from before. It doesn't give a reciprocal.  It says in the next paragraph—I'm sorry. Yes, you're right, Your Honor. I think that's because the page is cut off. But if you look at the next sample— Oh, I'm not talking about the samples. I'm talking about your actual—in your actual plea agreement. That's correct. It only puts that burden on the defendant, not the government. Right. So the defendant is saying— That's good for you. Yes, absolutely. That's my point, Your Honor. Yes. The defendant is essentially—if we agree with the government here, the defendant is saying ambush me. You know, tell me at the last minute. And that can't be the case. And the important thing that even if the attorney was sloppy, no district court judge would accept a plea agreement with those terms. Judges don't like to be ambushed by this kind of stuff. And they would not allow the government to come in and do this at the last minute. Now, that doesn't help you because some judge did accept this, didn't they? Well— So you have to be careful with that one. You don't mean no, do you? No, not no. You don't mean no. I think that goes more to the ambiguity point, Your Honor. But the other issue that I think is very important based on questions that Chief Judge Gregory and Judge Wynn asked was the issue of, you know, what is he getting in return? And I think one thing I haven't talked about is the fact that if you look at this factual scenario here, which is his sentencing guidelines were 71 months on the high end and the statutory maximum was 10 years, he's really not getting, unless the government is binding itself to the guidelines, he's not really getting much of a deal. And he's really not getting much of a bargain at all because the prior prosecutor, the prosecutor who investigated and brought this, was actually asked by the district judge, the judge asked her, he said, could you have charged another count? Could you have charged a Hobbs Act robbery on top of this? And she candidly admitted to the judge that, no, Your Honor, we couldn't because we didn't have the evidence to do that. So there really was, you know, the only real leverage to get him to accept this plea was to make some kind of representation that the government was bound by the sentencing guidelines. And if you take that away, he's giving up appellate rights, he's giving up trial rights, he's giving up all kinds of really important rights for no promise in exchange from the government. And that just doesn't make sense. And under the law of this circuit, the court, I think, can and should consider that as very powerful evidence that this is not what the plea agreement means. So with that, Your Honors, I think I've made all the points I have unless Your Honors have any questions. I'll sit down. Thank you. Thank you, Your Honors. All right. I'll ask the clerk to adjourn the court sine die and then we'll come down and greet counsel. This honorable court stands adjourned sine die. God save the United States and this honorable court.
judges: Roger L. Gregory, James A. Wynn Jr., Stephanie D. Thacker